IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DEBRADRE JACKSON,

                                                        OPINION AND ORDER

                    Plaintiff,

                                                            19-cv-939-bbc

            v.

ROBERT SOUSEK, SANDRA ENDER,
PAULINE HULSTEIN, TAMMY MAASSEN,
DEBRA TIDQUIST, BRET REYNOLDS,
LIZZIE TEGELS AND KRISTINE PRALLE,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        Pro se plaintiff DeBradre Jackson is proceeding on Eighth Amendment claims that

health services staff at Jackson Correctional Institution failed to provide him treatment for

spine and shoulder pain.  Now before the court is defendants' motion for summary

judgment, in which they argue that plaintiff cannot prove that any defendant acted with

deliberate indifference to his serious medical needs.  Dkt. #16.

        I will grant the motion with respect to plaintiff's claims against defendants Bret

Reynolds, Debra Tidquist, Kristine Pralle, and Lizzie Tegels, because plaintiff has failed to

show that those defendants were personally involved in denying him treatment or in failing

to arrange treatment for him.  However, I will deny the motion with respect to plaintiff's

claims against defendants Sandra Ender, Robert Sousek, Pauline Hulstein, and Tammy

Maassen.  Plaintiff has submitted evidence from which a jury could conclude that those

defendants knew that plaintiff needed treatment for his shoulder and spine pain and that

they could have taken steps to arrange treatment for plaintiff, but failed to do so.

1

UNDISPUTED FACTS

A. <u>The Parties</u>

Plaintiff DeBradre Jackson was incarcerated at Jackson Correctional Institution at all times relevant to this lawsuit.  Defendants worked at Jackson Correctional: Sandra Ender, Robert Sousek, Pauline Hulstein, and Kristine Pralle worked as nurses; Debra Tidquist was an advanced practice nurse prescriber; Tammy Maassen was the heath service manager and nursing supervisor; Lizzie Tegels was the warden; and Bret Reynolds was a consulting psychiatrist.

B. <u>Plaintiff's History of Back and Shoulder Pain</u>

Plaintiff has experienced chronic neck, back and shoulder pain since April 2017, when he was injured while in custody at Racine Correctional Institution.  Between April 2017 and February 2019, plaintiff received acetaminophen or ibuprofen, analgesic balm, and ice for the pain.  He also received physical therapy and occupational therapy.  When he was discharged from therapy in September 2018, he was given an exercise program to perform in his cell, along with a TENS unit, therapy resistance band, and pain medication.

C. <u>Plaintiff's Medical Care at Jackson Correctional Institution</u>

Plaintiff was transferred to Jackson Correctional Institution on February 5, 2019. That same day, he completed a health service request, requesting a referral to physical therapy and occupational therapy for his spine and shoulder injury.  On February 6, 2019,

2

defendant Nurse Pauline Hulstein responded that plaintiff was scheduled to see a nurse to address his pain problems.

Plaintiff saw defendant Nurse Sandra Ender on February 11, 2019, in response to his health service request about shoulder and spine pain.  Plaintiff requested a referral to physical therapy, a low bunk, an extra pillow and blanket, a TENS unit, resistance band, and an ice pack.  Plaintiff had had those items and restrictions at the prison where he was housed previously, but the restrictions had expired, as had his referral to physical therapy.  Nurse Ender gave plaintiff a pillow and blanket and told him to limit his activities, so as to not aggravate the shoulder injury.  She told him that she did not have authority to approve a low bunk request and that plaintiff would have to seek permission from an advanced care provider or the special needs committee for his other requests.  Ender did not refer plaintiff's request to a provider or to the special needs committee.

On February 20 and 21, 2019, plaintiff submitted two health service requests asking for his TENS unit.  He also wrote that his neck, shoulder and back injury had been bothering him.  Health services staff responded that they did not have his TENS unit and that he should contact the property department.  Health services staff noted that his TENS unit order had expired, so they scheduled an appointment for plaintiff with a nurse.

On February 23, 2019, plaintiff saw defendant Nurse Robert Sousek. Plaintiff complained that his cervical spine and shoulder pain had increased since his transfer to Jackson Correctional.  He asked for access to his TENS unit and resistance bands for his physical therapy exercises.  Sousek assessed plaintiff's musculoskeletal range of motion and

noted that plaintiff could not raise his right arm above the 10 o'clock level without experiencing pain, but that his cervical spine was unremarkable and he was able to move his head without grimacing. Sousek noted that he would send an email to physical therapy, and he told plaintiff that he would refer plaintiff to an advanced care provider. However, Sousek did not send an email to physical therapy or refer plaintiff to a provider.

On April 28, 2019 and August 15, 2019, Nurse Ender saw plaintiff at his cell door. Ender says that plaintiff complained only about his dry skin, but plaintiff says he complained about dry skin and shoulder and spine pain. He also asked Ender about his appointments with an advanced care provider and physical therapy. Plaintiff says that Ender told him to be patient because they were a little behind.

By August 2019, plaintiff still had not been seen by an advanced care provider about his shoulder and spine pain, and he had not received a TENS unit or been referred to physical therapy. In August 2019, plaintiff submitted five health service requests asking for a TENS unit and to be seen by a provider. Health services staff responded that his order for a TENS unit had expired and that he needed to complete a "blue slip" to schedule an appointment with a provider. Plaintiff spoke with defendant Nurse Hulstein about getting an appointment, and Hulstein told plaintiff that he had not submitted any blue health service requests for his pain. Plaintiff had actually filed several such requests. Hulstein also responded to one of plaintiff's health service requests stating that he had been scheduled to see a nurse.

On August 14, 2019, plaintiff submitted an interview/information request to

defendant Warden Lizzie Tegels regarding his TENS unit for his cervical and shoulder injury.  Plaintiff wrote that he had contacted health services and was frustrated because staff had not scheduled an appointment for him with physical therapy.  Warden Tegels forwarded the request to health services.  On August 23, 2019, defendant Tammy Maassen, the health services unit manager, responded to the information/interview request, noting that plaintiff's referral for the TENs unit had expired prior to his arrival at Jackson Correctional and that plaintiff would need a new referral for physical therapy, a TENS Unit and resistance bands. Maassen added that plaintiff would be examined by a nurse soon.

On September 3, 2019, Nurse Ender saw plaintiff at his cell door. Plaintiff told her that he needed a physical therapy referral and a TENS unit for his shoulder.  Ender sent an email to the medical scheduler to make the appointment for plaintiff to be seen.  A few days later, Ender sent defendant Nurse Practitioner Debra Tidquist a note regarding plaintiff's request for a physical therapy referral and TENS unit.

On September 8, 2019, Tidquist responded to Nurse Ender by stating that she needed to see plaintiff before she would approve a referral for physical therapy or a TENS unit.  According to Tidquist, she wanted to insure that plaintiff was still experiencing pain and had been engaging in his exercise program before she authorized physical therapy, a TENS unit, or resistance band.  Nurse Ender then sent a message to the scheduler asking that plaintiff be scheduled for an appointment with a provider.

Plaintiff submitted another health service request on September 15, 2019, stating that his shoulder and spine pain were getting worse, his arm tingled when he lay down, he

5

needed a TENS unit and he wanted to be seen by a provider.  Defendant Nurse Kristine Pralle responded that plaintiff had been referred to a provider.  Plaintiff also filed an inmate complaint about not being seen by a physician and his repeated requests for a TENS unit. Defendant Maassen reviewed the complaint and recommended dismissal.

On September 23, 2019, submitted another interview/information request, stating that he had complained to health services staff during rounds about his shoulder and spine pain and that he had completed a blue slip, but he had not been seen.  Health services staff responded that he would be scheduled soon.  On September 27, Nurse Ender emailed the scheduler again about making an appointment for plaintiff to be seen by an advanced care provider.  The scheduler responded on September 30 that plaintiff had an appointment scheduled.

On October 14, 2019, plaintiff sent two messages, through the prison kiosk system, stating that he needed help because his arms were going numb when he lay down.  He stated that he had already contacted health services and that they were not responding to him.  The security director told plaintiff to work with his unit manager.  The messages were also forwarded to Warden Tegels' office.  Tegels responded that she was not a medical professional and that plaintiff should direct his concerns to health services.  Tegels forwarded her responses to plaintiff's messages to defendant Maassen.

 On October 23, 2019, plaintiff saw a nurse for complaints of a sharp, pulling, tearing, and tingling sensations when he lay on his back.  Plaintiff told the nurse that he was in pain. The nurse noted that plaintiff's right shoulder bursa did not cause pain or tenderness when

6

she applied pressure.

Plaintiff never saw an advanced care provider or physical therapist while he was housed at Jackson Correctional Institution.

### D.  Plaintiff's Medical Care after Transfer

On October 29, 2019, plaintiff was transferred to Dodge Correctional Institution temporarily, and then was transferred to the Wisconsin Secure Program Facility on November 4, 2019.  While he was at Dodge, a nurse gave him information about bursitis and gave him ice and acetaminophen for his pain.  (Plaintiff says the nurse diagnosed bursitis.)  At WSPF, he saw a physician within three days of his transfer who diagnosed chronic strain of his right trapezius muscle.  He was given naproxen, a TENS unit, and a resistance band so he could continue his physical therapy exercises.

### OPINION

Plaintiff contends that defendants' failure to provide or arrange any treatment for his shoulder and spine pain during the nine months he was housed at Jackson Correctional Institution violated his Eighth Amendment rights. To prevail on a claim for inadequate medical care under the Eighth Amendment, plaintiff must show that a prison official was "deliberately indifferent" to a "serious medical need."  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). "Deliberate indifference" means that the officials are aware that the prisoner needs medical treatment, but are disregarding the risk by consciously failing to take

reasonable measures.  Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997).

Defendants have not denied that plaintiff's spine and shoulder injury were not a serious medical need, so I need not address that issue.  King v. Kramer, 680 F.3d 1013, 1018 (7th Cir. 2012).  However, defendants contend that plaintiff cannot establish that any defendant was deliberately indifferent to his serious medical need because he cannot show that the delay in his receiving treatment caused him any serious harm.  Defendants focus in particular on plaintiff's allegation that the delay in treatment caused him to develop bursitis in his shoulder. They argue that plaintiff has no admissible evidence that he developed bursitis, let alone that the lack of treatment at Jackson Correctional caused him such a problem.

Defendants are correct that plaintiff has not shown that he developed bursitis as a result of being denied medical care at Jackson Correctional Institution.  However, plaintiff does not need to prove that he developed bursitis to succeed on his Eighth Amendment claim. A prisoner can support a claim of deliberate indifference with evidence of "an inexplicable delay in treatment which serves no penological interest." Petties v. Carter, 836 F.3d 722, 730 (7th Cir. 2016). Whether a delay violates the constitution depends on the seriousness of the condition, the ease of providing treatment, and whether the delay exacerbated the injury or unnecessarily prolonged pain.  Arnett v. Webster, 658 F.3d 742, 753 (7th Cir. 2011) (dismissal vacated where complaints of pain were ignored for ten months); Edwards v. Snyder, 478 F.3d 827, 831–32 (7th Cir. 2007) (reversing dismissal where treatment of compound fracture was delayed two days so as not to disturb doctor's

8

holiday plans).

According to plaintiff's version of events, which must be accepted as true at the summary judgment stage, <u>Gaddis v. DeMattei</u>, 30 F.4th 625, 628 (7th Cir. 2022), his shoulder and spine pain worsened while he was at Jackson Correctional Institution because he was denied access to adequate pain medication, a TENS unit, and the resistance band he needed to perform his physical therapy exercises properly. He also claims that his problems worsened to the point that his arm turned numb and tingled and he felt a tearing sensation when he lay down. Defendants have presented no evidence or argument to undermine plaintiff's assertions about his pain.

Defendants suggest that the failure to provide plaintiff medical treatment during the nine-month period was justified, because Jackson Correctional Institution's health services unit was understaffed during the relevant time period, and was having to provide care to numerous prisoners, including some prisoners from other prisons. They also argue that plaintiff was held in the restrictive housing unit during part of his stay at the prison, which could have resulted in cancellation of his medical appointments. Finally, defendants say that prisoners don't have the right to demand specific treatment, <u>Walker v. Wexford Health Sources, Inc.</u>, 940 F.3d 954, 965 (7th Cir. 2019), thus, plaintiff's specific demand for a TENS unit and resistance band do not support a deliberate indifference claim. However, defendants have submitted no evidence showing that plaintiff's denial of care was the result of staffing problems or his placement in restrictive housing. Nor is there evidence that he was denied care because he was demanding specific treatment. Instead, the evidence shows

9

that plaintiff was never provided treatment for his chronic pain and was never scheduled to be seen by an advanced care provider during the nine-month period he was housed at Jackson Correctional Institution.  He was not even referred to an advanced care provider until September 2019, seven months after he was transferred to that prison.  Defendants provide no explanation for the delay in plaintiff's being referred to an advanced care provider.  A jury could reasonably conclude that the delay was an "inexplicable delay in treatment" that served "no penological interest" and that "exacerbated the injury or unnecessarily prolonged" plaintiff's pain.

The remaining question is whether plaintiff has presented evidence showing that any particular defendant acted with deliberate indifference to his shoulder and spine pain. Claims under § 1983 must be based on a defendant's personal involvement in the alleged constitutional violation, and not just on a defendant's position as a supervisor or administrator.  <u>Kuhn v. Goodlow</u>, 678 F.3d 552, 555–56 (7th Cir. 2012); <u>Burks v. Raemisch</u>, 555 F.3d 592, 593-94 (7th Cir. 2009).

Plaintiff has presented no evidence that defendants Brett Reynolds, Debra Tidquist, Kristine Pralle, or Lizzie Tegels were personally involved in denying him medical treatment while he was at the  Jackson Correctional institution. Dr. Reynolds was a consulting psychiatrist at the prison, but he had no involvement in plaintiff's complaints or care related to his spine and shoulder pain.  Therefore, plaintiff cannot maintain an Eighth Amendment claim against the doctor for plaintiff's spine and shoulder pain.

Advanced Nurse Practitioner Tidquist was unaware of plaintiff's medical complaints

until September 2019, when she was notified that plaintiff wanted a TENS unit and resistance band. Tidquist promptly directed the nurse to schedule plaintiff for an appointment with her. Tidquist could not schedule plaintiff herself, and used her medical judgment in deciding that plaintiff should be examined before she prescribed him a TENS unit or resistance band. Norfleet v. Webster, 439 F.3d 392, 396 (7th Cir. 2006) (treatment decision based on medical judgment does not violate Eighth Amendment).

Nurse Pralle's only involvement with plaintiff was in responding to a health service request that he filed in September 2019, after he had been referred to ANP Tidquist and the scheduler. Pralle responded to plaintiff that he had been referred to an advanced care provider. At that point, there was nothing Pralle could do arrange for plaintiff to see Tidquist sooner.

Warden Tegels's only involvement with plaintiff's health complaints was her review of the information requests that plaintiff sent to her office. As a non-medical official, Tegels appropriately referred plaintiff to health services staff. Arnett, 658 F.3d at 755 ("Non-medical defendants . . . can rely on the expertise of medical personnel."). Accordingly, Reynolds, Tidquist, Pralle and Tegels are entitled to summary judgment on plaintiff's Eighth Amendment claims against them.

This leaves plaintiff's claims against Nurses Ender, Sousek and Hulstein, and health services manager Maassen. Both Ender and Sousek saw and assessed plaintiff's shoulder, back, and neck pain in February 2019. They both knew that plaintiff needed to be seen by an advanced care provider or physical therapist before he could receive additional treatment,

but neither made a referral for him with a provider or give any explanation now for why they failed to do so.  According to plaintiff, he complained to Nurse Ender again in April and August, and she again failed to refer him to an advanced care provider or made any attempt to do so.  She did not attempt to arrange additional care for him until September 2019.  Because neither Ender nor Sousek has provided any explanation for their failure to refer plaintiff to an advanced care or for their failure to provide any other medical treatment to him, a jury could reasonably conclude that they failed to act despite knowing that plaintiff was suffering and needed additional medical care.  See Arnett, 658 F.3d at 751.

As for Nurses Hulstein and Maassen, neither actually examined plaintiff.  However, both reviewed plaintiff's complaints in which he stated that he had been waiting for months for medical care for his shoulder and spine pain, and according to plaintiff, Hulstein spoke with him at least once about his need for medical care.  In addition, although neither nurse had the authority to provide the care he requested, they suggest no reason why they could not have taken steps to help plaintiff obtain care.  In particular, they could have reviewed plaintiff's medical records, noted that plaintiff had been seeking care since February 2019, and referred plaintiff to an advanced care provider or the scheduler so that he could be placed in queue for scheduling.  Instead, Hulstein responded to plaintiff that he needed to submit additional health service requests, despite his having submitted several already.

Maassen told plaintiff that he should present his concerns to a nurse, even though he had already done so.  Neither Hulstein nor Maassen provided a declaration explaining why they failed to take steps to help plaintiff.  Without an explanation, a jury could reasonably

conclude that these defendants essentially ignored plaintiff's medical needs.

The final question is whether defendants Nurses Ender, Sousek, Hulstein and Maassen are entitled to qualified immunity.  Qualified immunity protects government officials from liability for civil damages so long as their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Pearson v. Callahan, 555 U.S. 223, 231 (2009); Estate of Clark v. Walker, 865 F.3d 544, 552–53 (7th Cir. 2017).  Defendants contend that they are entitled to qualified immunity because their conduct did not violate clearly established law.  However, it is clearly established that pain can be a serious medical need, and that needless delays in treating such pain can violate the Eighth Amendment.  McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010), Grieveson v. Anderson, 538 F.3d 763, 779 (7th Cir. 2008).  Defendants are not entitled to qualified immunity.

## ORDER

IT IS ORDERED that

1.  Defendants' motion for summary judgment, dkt. #16, is GRANTED IN PART and DENIED IN PART.  The motion is GRANTED with respect to plaintiff DeBradre Jackson's claims against defendants Bret Reynolds, Debra Tidquist, Kristine Pralle and Lizzie Tegels.  The motion is DENIED in all other respects.

2.  The clerk of court is directed to set this case for a scheduling conference with Magistrate Judge Crocker so that this case can be set for trial on plaintiff's remaining claims

against defendants Sandra Ender, Robert Sousek, Pauline Hulstein and Tammy Maassen.

Entered this 29th day of June, 2022.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

14